**Bill R. HARRIS, Plaintiff,**

v.

**BOARD OF PUBLIC UTILITIES OF the CITY OF KANSAS CITY, KANSAS; The City of Kansas City, Kansas; Tom Lynch, Cliff Nesselrode, Clarence Degraeves, Ana Riojas, and Joe Dick, individually and as members of the Board of Public Utilities; Eugene Miller and Terry W. Drake, Defendants.**

Civ. A. No. 88–2003–V.

United States District Court,
D. Kansas.

Jan. 18, 1991.

John H. Fields, Kansas City, Kan., for plaintiff.

Daniel B. Denk, McAnany, Van Cleave & Phillips, P.A., Kansas City, Kan., Kathryn Pruessner Peters, Burke, Williams, Sorensen & Gaar, Overland Park, Kan., Rodney L. Turner, Turner, Vader & Koch, Kansas City, Kan., Lee M. Smithyman, Smithyman & Zakoura, Chtd., Overland Park, Kan., for defendants.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

This is a civil rights and employment discrimination action brought pursuant to several legal theories under Title VII, 42 U.S.C. §§ 2000e, *et seq.,* and 42 U.S.C. §§ 1981, 1983, 1985(3) and 1986. Plaintiff also asserts a state claim for wrongful discharge under the doctrine of pendent jurisdiction. Plaintiff seeks both legal and equitable relief. The case now comes before the court on defendants' joint motions for summary judgment pursuant to Fed.R. Civ.P. 56(b) (Docs. 65, 68 and 69). Plaintiff has responded and opposes defendants' motions (Doc. 84). For the reasons stated below, the motions are granted in part.

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's proper inquiry is "whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim(s). This burden may be discharged by "showing," that is, pointing out to the district court, that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553. Fed.R.Civ.P. 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2552 (emphasis in original). Once the moving party has properly supported its motion for summary judgment the burden shifts to the nonmoving party: "a party opposing ... may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden that the party will face at trial on the particular claim. *Id.* at 254, 106 S.Ct. at 2513.

The pertinent facts, as established by the record of the case, appear as follows. Plaintiff, Bill R. Harris, a white male, was hired in August, 1983, by the Board of Public Utilities of the City of Kansas City, Kansas ("BPU"). The BPU hired plaintiff to manage its Human Resources Department, also known as its Personnel Department. Plaintiff did not sign a written contract of employment, nor was he informed that he had been hired for a definite term. Plaintiff concedes that he and defendants never discussed the duration of his employment.

As director of Human Resources, plaintiff's job duties included, among others, supervising employees in the department, establishing performance based interviewing, initiating a management by objective concept, rewriting job classifications for salaried exempt employees, reviewing job classifications for salaried exempt employees, reviewing performance review sheets, negotiating some labor contracts, and handling some arbitration cases at the hearing stage. During his tenure at BPU plaintiff's department consisted of between nine and thirteen employees.

As agreed, plaintiff commenced his employment with the BPU in August, 1983. At that time, plaintiff's supervisor was defendant Terry W. Drake, who was vice-president in charge of Administration. By March 30, 1984, plaintiff was reporting directly to defendant Gene Miller, who was general manager of the BPU. Eighteen months after plaintiff began working for the BPU, the BPU adopted a Personnel Code which delineated certain employee infractions and resulting penalties, including discharge. The Personnel Code also outlined a grievance procedure for disgruntled employees who were adversely affected by employment decisions.

Eventually, plaintiff became convinced that the BPU was failing to abide by various employment discrimination laws and guidelines. In particular, plaintiff opposed what he perceived to be a system of patronage hiring and the discriminatory treatment of certain minority employees. Plaintiff, at several different times, voiced his opposition to these practices. By the end of 1985 and early 1986, plaintiff's job classification had been lowered and he was excluded from quarterly management re-

treats in which he had previously participated.

On April 30, 1986, plaintiff received notice that he would be discharged effective on May 16, 1986, with salary and benefits to continue for three months thereafter. The notice of termination (prepared by defendant Miller) indicated that the reason therefor was a "lack of commitment" to the BPU:

> ... I have inquired of your plans to relocate your family to Kansas City, Kansas. Specifically, we have discussed the importance of your making a commitment to the BPU. In view of the immediate critical needs, and for continuing leadership in Human Resources, I again on April 18 [1986] requested that you advise me of your future career plans. Yesterday you asked for further time (May 27) to respond.
>
> The fact that a commitment from you requires such deliberations (in light of your 2½ years with the BPU) exemplifies your limbo status and likelihood of its continuance. Therefore, I have decided to make a change ...

Lack of commitment is not listed in the Personnel Code as an infraction meriting discharge. Following his discharge, plaintiff did not file a grievance with the BPU. It is undisputed that plaintiff received no pretermination hearing at which he could dispute the factual basis for his termination.

On August 26, 1986, plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff received his right to sue letter on October 30, 1987. Between the time of his discharge and the reception of this letter, others were made aware of his departure from the BPU. In disseminating information regarding plaintiff's departure, the BPU characterized plaintiff's termination as a resignation. The BPU reported to the EEOC, during its investigation of plaintiff's charge, that plaintiff had resigned. The BPU later recanted this statement. The BPU also released a statement to the press to the effect that plaintiff had resigned. Since his termination, plaintiff claims that he has been unable to obtain comparable full-time employment.

On January 5, 1988, plaintiff filed this action against the BPU, its board members, his supervisors, and the City of Kansas City, Kansas. Plaintiff brings his action in four counts. Count I seeks recovery under 42 U.S.C. § 1983, with allegations that defendants' conduct violated plaintiff's first amendment right of free speech and association, his fourteenth amendment right to equal protection of the law, his fourteenth amendment right to procedural and substantive due process in the deprivation of his property and liberty interests, and that such deprivations were in derogation of the clear public policy of the State of Kansas, as articulated in its reported court decisions and statutory law. Count II apparently alleges a 42 U.S.C. § 1983 claim that plaintiff was fired because of his refusal to participate in a patronage hiring program which allegedly constituted a violation of his first amendment right as a public employee. Count III is based in Title VII of the Civil Rights Act of 1964, as amended, and claims that plaintiff was discharged in retaliation for his opposition to defendants' racially discriminatory employment practices, 42 U.S.C. § 2000e–3(a). Count IV asserts that all of the alleged misconduct surrounding plaintiff's termination is actionable under 42 U.S.C. § 1981. Under each of these four counts, plaintiff seeks to recover both compensatory and, with the exception of Count III, punitive damages. We shall consider the substance of each of plaintiff's claims.

## I. THE 42 U.S.C. § 1983 CLAIMS

### A. *Procedural Due Process*

Plaintiff asserts that his discharge from the BPU violated his rights to procedural due process under the Fourteenth Amendment. The Fourteenth Amendment's guarantee of procedural due process applies when a constitutionally protected property or liberty interest is at stake. As the United States Supreme Court has long held:

> The requirements of procedural due process apply only to the deprivation of in-

terests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of hearing is paramount. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). In the instant case, it is uncontroverted that plaintiff received no pretermination hearing. At issue is whether, under the facts presented here, plaintiff had a protected interest in his continued employment with the BPU.

### (1) Property Interest

An interest in property arises only when there is a legitimate claim of entitlement to it; merely to have an abstract need or desire for the particular benefit or a unilateral expectation of it is insufficient to create a property interest. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Property interests are not created by the Constitution, but arise from independent sources such as state statutes, local ordinances, established rules, or mutually explicit understandings. *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *Richardson v. City of Albuquerque*, 857 F.2d 727, 731 (10th Cir.1988). The existence of such "rules or mutually explicit understandings" are, of course, determined by reference to state law. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). We must, therefore, decide whether the Kansas Supreme Court would find a property interest under the facts of this case. *Graham v. City of Oklahoma City*, 859 F.2d 142, 146 (10th Cir.1988).

Kansas follows the general rule that, in the absence of a contract covering the duration of employment, the employment is terminable at the will of either party. *Johnson v. National Beef Packing Co.*, 220 Kan. 52, 54–55, 551 P.2d 779 (1976). An "at-will" employee has no property interest in employment. *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir.1988). However, Kansas has recognized implied-in-fact employment contracts as an exception to the "at-will" doctrine. *Morriss v. Coleman Co.*, 241 Kan. 501, 513, 738 P.2d 841 (1987).

Plaintiff maintains that an implied contract for continued employment existed in this instance for two reasons. First, neither the general manager Miller, nor any of the elected board members ever indicated that they were dissatisfied with his performance. Accordingly, each year he received the maximum merit increase in salary. Additionally, although he was never given a formal evaluation, several of the defendants told him that he was doing a good job despite the fact that it was a difficult one. Furthermore, plaintiff, at one point, heard from a reporter of the Kansas City Kansan newspaper that he was going to be fired. When he confronted defendant Miller concerning this rumor, Miller told him not to worry. Plaintiff argues that these circumstances at least raise an inference from which a finder of fact could conclude an implied-in-fact contract existed.

Plaintiff fails to show us how assurances not to worry about rumors of discharge, how compliments concerning performance, and how regular pay raises create a mutually intended contract. These factual allegations, even when taken as true, fail to demonstrate a contract provision outlining when termination is permitted, or the duration of employment. In *Conaway v. Smith*, 853 F.2d at 793, the Tenth Circuit held that an expectation to remain employed as long as one performs the duties of his or her employment properly is a unilateral expectation and does not, by itself, create a property interest in that employment. This is true even where that expectation is created by verbal or nonverbal communications of the employer. *Id.* It is apparent to us that the factual allegations set forth above indicate nothing more than a unilateral expectation of continued employment on the part of plaintiff, and do not represent a mutual intention to create an implied contract for a definite duration.

Second, Plaintiff asserts that the adoption of the BPU Personnel Code in 1985 created an implied contract for continued employment. The State of Kansas rec-

ognizes that termination procedures in an employment manual, such as this, "may be one of the relevant circumstances from which an implied contract can be inferred." *Rouse v. Peoples Natural Gas Co.*, 605 F.Supp. 230, 232 (D.Kan.1985).

A copy of the relevant portions of the BPU Personnel Code has been supplied to us with regard to this motion. The Personnel Code, under the heading *Discipline and Disciplinary Action*, states that it recognizes the need to maintain discipline, establish and communicate reasonable rules of conduct and to fairly enforce these rules where necessary. The stated purpose of maintaining discipline was to improve employee performance and morale. The guide lists 33 infractions requiring discipline, the discipline to be implemented, and certain disciplinary procedures, including discharge. The guide states that "[t]hese rules are not considered or intended to include all situations where disciplinary action may be required." *Personnel Code* at 27. The code further provides a grievance procedure to resolve any dispute, disagreement or difference between an employee and BPU concerning its application of the Personnel Code.

Plaintiff maintains that by its terms, the Personnel Code adopted the duty of good faith and fair dealing in the employment context, and therefore plaintiff had every expectation that he would not be discharged absent one of the listed infractions or some other serious malfeasance. We disagree. The manual, itself, while it does provide disciplinary guidelines, does not purport to limit BPU's authority to discipline or discharge employees. The code lists various infractions and corresponding penalties, but it does not state that discipline, including termination, is limited to the situations expressed therein. Furthermore, there is nothing in the manual to warrant a belief that BPU employees are assured of reasonable job security or continued employment as long as satisfactory service is rendered. The Code does no more than provide some accepted reasons for discipline and discharge. Without any language or structure in the code to limit the BPU's traditional, unfettered right to discipline and discharge employees as it sees fit, the court finds no support for an implied employment contract in the Personnel Code. Defendants' motions for summary judgment on this issue are granted.

### (2) Liberty Interest

■ Plaintiff also claims entitlement to procedural due process under the laws on the ground that his liberty interest in continued employment was implicated by the manner in which his termination was effected.

The concept of liberty recognizes two particular interests of a public employee: (1) a protection of his good name, reputation, honor and integrity; and (2) freedom to take advantage of other employment opportunities. *Conaway v. Smith*, 853 F.2d at 794. To establish a liberty interest plaintiff must:

(1) show that he was *stigmatized* in connection with an alteration of [his] legal status as an employee, (2) allege that the stigma arose from substantially *false* characterizations of the employee or [his] conduct, and (3) demonstrate that the damaging characterizations were made *public* through channels other than the litigation initiated by the employee.

*Sipes v. United States*, 744 F.2d 1418, 1421 (10th Cir.1984) (emphasis in original).

The crux of plaintiff's claim for deprivation of liberty is that, after his termination, the BPU falsely characterized the nature of his termination. Plaintiff asserts that the BPU disseminated false information that plaintiff had resigned his position. Plaintiff claims that he was stigmatized by this false characterization. Plaintiff also claims that he has been unable to obtain comparable employment after having been terminated under what he calls "a cloud." Plaintiff, however, does not assert that the true nature of his "departure" was ever disseminated.

■ The question therefore is whether the BPU's false announcements that plaintiff had "resigned" implicates plaintiff's liberty interest. We conclude that it does not. We do not connote the term "resigned" in the same manner as plaintiff.

**1192**

To establish that a charge against one is stigmatizing one must generally show that one's "good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Polson v. Davis,* 635 F.Supp. 1130, 1142 (D.Kan. 1986), *aff'd,* 895 F.2d 705 (10th Cir.1990). In *Miller v. City of Mission, Kansas,* 705 F.2d 368, 373 (10th Cir.1983), the Tenth Circuit further described as stigmatizing comments that "as a practical matter foreclosed other employment opportunities." We do not think that public dissemination of "resignation," whether true or not, absent a revelation of the true reasons for plaintiff's departure, would impugn his good name, reputation, honor, or integrity, or would as a practical matter foreclose other employment opportunities. "Resigning" simply does not carry with it the badge of infamy necessary to support a claim for deprivation of a liberty interest. Defendants' motions for summary judgment on this issue are therefore granted.

Since plaintiff cannot show that defendants deprived him of either a property or liberty interest in conjunction with his termination we need not review whether the proffered procedural remedies were constitutionally firm.

### B. *Substantive Due Process*

█ Plaintiff contends that disciplining an employee for failing to move his family to the employer's city invades the constitutionally protected privacy of one's family life and runs afoul of the notion of substantive due process. The rights of substantive due process are deemed founded not upon state provisions but upon notions of fundamental personal interests derived from the Federal Constitution. *Mangels v. Pena,* 789 F.2d 836, 839 (10th Cir.1986). Consequently, it has been held that absent a liberty or property interest, an at-will employee has no greater right to substantive due process than he or she does to procedural due process. *Powers v. Mancos School Dist.,* 539 F.2d 38, 43 (10th Cir. 1976). The Tenth Circuit has held that "[i]n order to present a claim of denial of 'substantive' due process by a discharge for arbitrary or capricious reasons, a liber-

ty or property interest must be present to which the protection of due process can attach." *Sipes v. United States,* 744 F.2d at 1420. We conclude, therefore, as a matter of law, that because plaintiff lacked a constitutionally protected interest in his continued employment, he cannot claim that defendants have invaded another constitutionally protected right substantively on account of his termination. Defendants' motions for summary judgment on this issue are granted.

### C. *Equal Protection*

█ Plaintiff also alleges that he was denied equal protection of the laws in violation of the fourteenth amendment, and that this deprivation is redressable under 42 U.S.C. § 1983. The right to equal protection is not an abstract right existing in a vacuum. The fundamental purpose of equal protection of the laws is to ensure that the government treats every individual the same as other persons similarly situated. *Reynolds v. Sims,* 377 U.S. 533, 565, 84 S.Ct. 1362, 1383, 12 L.Ed.2d 506 (1964). In the present case, not only has plaintiff failed to come forward with proof that he was treated any differently in his discharge than any other BPU employee who was disciplined, but he also fails to identify individuals in substantially similar situations at the BPU who were afforded greater protection under the laws than him. The bare allegations made in the Complaint on this claim are not sufficient to overcome defendants' motions for summary judgment.

### D. *First Amendment*

█ Plaintiff also asserts a first amendment claim, arguing that the BPU terminated him not for the stated reasons of "lack of commitment," but in retaliation for his complaints to his supervisor concerning patronage hiring, for his support of a group of black employees seeking retroactive seniority in the BPU, and for his stance against unlawful discrimination against minorities at the BPU. It is his belief that said termination violated his

first amendment right to freedom of speech and association.

Plaintiff alludes to several work-related incidents which he maintains contributed to defendants' decision to terminate him. First, plaintiff opposed what he perceived to be patronage hiring practices of the BPU. Plaintiff asserts that he went to defendant Miller and verbally complained that board members demanded that he hire certain people. Plaintiff further states that when Miller began giving him the lists (of people to hire) he realized that nothing was going to be done and that defendant Miller, himself, expected him to hire those people. Second, plaintiff claims that he was openly critical of BPU's record on discrimination. He claims that at one point, defendant Miller asked plaintiff for his perception of discrimination within the utility. Plaintiff responded negatively. Miller later reported plaintiff's opinions to the board. In a subsequent division managers' meeting plaintiff claims that he was "jumped" for expressing his opinions on discrimination and its existence within the BPU. Finally, plaintiff claims that he attempted to address a problem at the BPU involving the seniority status of certain black, full time temporary employees of the BPU. He claims that the BPU would hire certain employees and would designate them temporary full time employees. These employees, since they were only "temporary," would thereby be denied seniority status and certain benefits. Plaintiff claims that on two separate occasions— January and May, 1985—he dispatched letters to the BPU legal department, with copies to defendant Miller, concerning this problem. He also had several discussions with defendant Miller in regard to this topic, but Miller's decision was ultimately to do nothing.

In analyzing whether a public employer's actions impermissibly infringe on free speech rights, the Supreme Court has adopted a multi-tier test. *Schalk v. Gallemore*, 906 F.2d 491, 494 (10th Cir.1990). First, the court must decide whether the speech at issue touches on a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983). If it does, the court must balance the interest of the employee in making the statement against the employer's interest "in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1735, 20 L.Ed.2d 811 (1968). Third, if the preceding prerequisites are met, the speech is protected, and plaintiff must show his expression was the motivating factor in the detrimental employment decision. *Mt. Healthy City School Dist. Bd. of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Finally, if plaintiff sustains this burden, the employer can still prevail if it shows by a preponderance of the evidence that it would have made the same decision regardless of the protected speech. *Id.*

■ We conclude that plaintiff sustains his burden regarding the first two steps of the test and that there remains a question of fact concerning whether plaintiff's speech was a motivating factor in his dismissal. We also conclude that if plaintiff can show his speech was a motivating factor in his dismissal that there is a question of fact as to whether defendant would have made the same adverse employment decision regardless of the protected speech. For this reason we deny defendant's motion for summary judgment as it relates to plaintiff's first amendment freedom of speech claims.

### E. *Retaliatory Discharge*

■ Plaintiff also brings a state claim alleging that he was terminated in retaliation for his opposition to patronage hiring and discriminatory employment practices at the BPU. Both employment discrimination and patronage hiring are prohibited under Kansas state law, and violate Kansas public policy. *See* K.S.A. §§ 44–1001, *et seq.*

In *Tarr v. Riberglass, Inc.*, No. 83–4234, 1984 WL 1481 (D.Kan., *unpublished*, Feb. 6, 1984) [Available on WESTLAW, DCTU database], and *Polson v. Davis*, 635 F.Supp. at 1149, both Judge Richard D. Rogers and Chief Judge Earl E. O'Connor

of this court declined invitations to recognize an exception to the employment-at-will doctrine for employees terminated against Kansas state policy. Both found that such an exception is proper only when a plaintiff shows that he was discharged in contravention of public policy *and* that he is without a remedy under either state or federal law. *Polson*, 635 F.Supp. at 1149–50. In the present case plaintiff cannot do that. *See* K.S.A. §§ 44–1001, *et seq.* Therefore, under the "no other remedy available" test we decline to create an exception to the doctrine of employment-at-will in this case. Accordingly, we grant defendants' motions for summary judgment on plaintiff's pendent state retaliation claim.

## II. THE 42 U.S.C. §§ 1985–1986 CLAIMS

██ Plaintiff has alleged that defendants' actions violated 42 U.S.C. §§ 1985(3) and 1986. In essence, section 1985 prohibits conspiracies that deny individuals their civil rights. In order to establish a violation of section 1985(3), plaintiff must allege and prove: (1) a conspiracy; (2) for the purpose of depriving any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

██ We recognize, however, that section 1985 is not a general federal tort law, and was not intended to reach all conspiratorial interferences with the rights of others. *Taylor v. Nichols*, 409 F.Supp. 927, 936 (D.Kan.1976), *aff'd*, 558 F.2d 561 (10th Cir.1977). In order to support a claim under the statute, plaintiff must be a member of a statutorily protected class, and actions taken by defendants must stem from plaintiff's membership in that class. *Silkwood v. Kerr–McGee Corp.*, 637 F.2d 743, 746–47 (10th Cir.1980), *cert. denied*, 454 U.S. 833, 102 S.Ct. 132, 70 L.Ed.2d 111 (1981). There must be some racial, class-based, invidiously discriminatory animus

behind the conspirators' actions. *Carpenters v. Scott*, 463 U.S. 825, 838, 103 S.Ct. 3352, 3361, 77 L.Ed.2d 1049 (1983). We conclude that plaintiff's section 1985 claim does not involve class-based, invidious discrimination. Furthermore, section 1985(3) does not reach nonracial, political conspiracies. *Brown v. Reardon*, 770 F.2d 896 (10th Cir.1985). Defendants' motions for summary judgment as to the alleged violation of section 1985 are granted.

Furthermore, because we have concluded that plaintiff's section 1985 claim fails, his section 1986 claim must likewise fail. It is axiomatic that a section 1986 claim is entirely dependent upon the existence of a valid claim under section 1985. *Brown v. Chaffee*, 612 F.2d 497 (10th Cir.1979); *Brown v. Reardon*, 770 F.2d at 907. Defendants' motions for summary judgment on plaintiff's section 1986 claims are therefore granted.

## III. THE TITLE VII CLAIMS

██ The BPU's stated reason for terminating plaintiff was a "lack of commitment" based on his hesitancy to move his family from Indiana to Kansas City. Plaintiff, however, alleges that his termination from the BPU was in retaliation for his opposition to the BPU's patronage hiring practices, his opposition to the BPU's discriminatory employment practices, and his attempts to help certain black employees attain retroactive seniority status. *See* 42 U.S.C. § 2000e–3(a). To establish a *prima facie* case of retaliatory discharge, a plaintiff must show: (1) that he engaged in protected opposition to Title VII discrimination or participated in a Title VII proceeding; (2) he was disadvantaged by an action or actions of his employer contemporaneously with or subsequent to such opposition or participation; and (3) there is a causal connection between the protected activity and the adverse employment action. *Burrus v. United Tel. Co.*, 683 F.2d 339, 343 (10th Cir.1982), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982); *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 634 (10th Cir.1988).

Once a *prima facie* case of retaliatory discharge has been established, the burden of production shifts to the defendants who must then articulate a legitimate, nondiscriminatory reason for the adverse action. *Anderson,* 861 F.2d at 634. Once the defendants have dispelled the inference of retaliatory discharge by establishing a legitimate reason, the plaintiff may still prevail if he demonstrates that the articulated reason was a mere pretext for discrimination. *Id.*

We conclude, from the factual record, that plaintiff can establish a *prima facie* case of discrimination. Defendants have, likewise, articulated a legitimate, nondiscriminatory reason for terminating plaintiff. We conclude, however, that a genuine issue of material fact exists as to whether or not the reason given for plaintiff's termination was pretextual. For the foregoing reasons, defendants' motions for summary judgment, as it pertains to plaintiff's claim for retaliatory discharge under Title VII, are denied.

## IV. THE 42 U.S.C. § 1981 CLAIMS

We must grant defendants' motion for summary judgment on this issue. We have already determined that plaintiff was an at-will employee. Therefore his termination, even if the reasons therefor were illegal, did not impair his right to create or enforce a contract. We will not stretch the meaning of 42 U.S.C. § 1981 beyond the limits defined by the Supreme Court in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), which preclude section 1981 claims in wrongful discharge cases. Defendants' motions for summary judgment on this issue are granted.

## V. STATUTE OF LIMITATIONS

This litigation was commenced on January 5, 1988. Defendants assert that plaintiff's claims are governed by the two-year statute of limitations of K.S.A. § 60–513(a)(4). *Garcia v. University of Kansas,* 702 F.2d 849 (10th Cir.1983). Therefore, they conclude, that any claims for alleged acts of discrimination or other wrongdoing which occurred prior to January 5, 1986 are barred by the statute of limitations. We disagree. We feel that under the circumstances of this case that if there was a violation of plaintiff's rights that violation was a continuing one. *Bruno v. Western Electric Co.,* 829 F.2d 957, 961 (10th Cir.1987); *Simmons v. City of Kansas City, Kan.,* 129 F.R.D. 178, 179 (D.Kan.1989). Therefore, plaintiff's claims are not time barred.

## VI. PUNITIVE DAMAGES

*City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), precludes an award of punitive damages against municipal defendants (the City and the BPU) on 42 U.S.C. § 1983 claims. Individual defendants sued in their official or representative capacity are likewise immune to punitive damages. *See Brandon v. Holt,* 469 U.S. 464, 470 n. 16, 105 S.Ct. 873, 877, 83 L.Ed.2d 878 (1985). Furthermore, Title VII precludes the award of punitive damages in claims brought under it. Therefore, only the individual defendants sued in their individual capacity are potentially liable for punitive damages to plaintiff. For that reason, defendants' motions for summary judgment on this issue are granted in part and denied in part.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motions for summary judgment (Docs. 65, 68 and 69) are granted in part. Defendants' motions are denied with respect to plaintiff's First Amendment claims under 42 U.S.C. § 1983, his claims under Title VII, and his claims for punitive damages against the individual defendants sued in their individual capacities.

IT IS SO ORDERED.