**B.C. DANNER, Plaintiff–Appellee,**

v.

**INTERNATIONAL MEDICAL MARKET-ING, INC., Defendant–Appellant.**

No. 90–6079.

United States Court of Appeals,
Tenth Circuit.

Sept. 12, 1991.

Gary W. Gardenhire (Stanley M. Ward and Gary W. Williams, on the brief), Norman, Okl., for plaintiff-appellee.

Harry A. Woods, Jr. (Brian E. Shipp with him, on the brief), Crowe & Dunlevy, Oklahoma City, Okl., for defendant-appellant.

Before LOGAN and BALDOCK, Circuit Judges, and BRIGHT, Senior Circuit Judge *.

BRIGHT, Senior Circuit Judge.

International Medical Marketing, Inc. (IMM) appeals from the final judgment of the district court entered after a jury trial in a suit brought by B.C. Danner (Danner), alleging IMM defaulted on a promissory note. IMM denied defaulting on the note and counterclaimed, alleging that Danner had wrongfully repossessed the securing collateral and then failed to preserve it. The jury returned verdicts in favor of both parties. The district court determined that the verdicts were irreconcilably inconsistent. The district court then accepted the jury verdict for Danner on his default claim and granted Danner judgment notwithstanding the verdict (j.n.o.v.) with respect to IMM's wrongful repossession counterclaim.

On appeal, IMM argues that the district court erred by: (1) failing to grant its motion for directed verdict; (2) granting Dan-

---

* Honorable Myron H. Bright, Senior Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

ner j.n.o.v. rather than ordering a new trial once it determined that the jury verdicts were inconsistent; and (3) refusing to instruct the jury upon two of its theories of the case. Although we reject IMM's contention in issue 1, we hold that the district court erred by refusing to grant a new trial in light of the conflicting jury verdicts. We therefore reverse and remand the case to the district court for a new trial.

## I.

In 1984, Danner, the sole owner of Bio–Cide International, Inc. (Bio–Cide), agreed to sell all of the stock of Bio–Cide to IMM for $3 million. IMM paid $300,000 as a down payment and issued the promissory note at issue to Danner in the amount of $2.7 million.

The promissory note formed part of the purchase and sale agreement between Danner and IMM. A security interest in the Bio–Cide stock, among other things, secured the note. The parties placed the Bio–Cide stock in escrow with the Security National Bank, pending full payment of the note.

After the sale, IMM experienced cash flow problems. Between 1984 and 1987, IMM often failed to make timely payments of amounts due. On each occasion, Danner accepted the late payment. As a result of the continual late payments by IMM, the parties modified the stock purchase agreement three times. In each case, the modification revised the schedule of payments due under the promissory note. All other provisions of the stock purchase agreement remained in effect. Danner received consideration for the first two modifications. The final modification expressly reaffirmed Danner's right to exercise the default remedies contained in the original stock purchase agreement if IMM did not make timely payments pursuant to the new schedule. The final payment schedule required IMM to make a $20,000 payment on October 1, 1987.

IMM tendered the October payment to Danner's office on October 20, 1987, in the form of two checks for $10,000 drawn on IMM's account. At the time his office received the checks, Danner was traveling overseas. The checks were deposited in Danner's account at Friendly Bank in Oklahoma City on the day received. IMM's bank refused to honor one of the checks due to insufficient funds and the other check did not clear until October 27, 1987.

On October 30, Gerard Grosof, an IMM shareholder, endorsed a $10,000 check payable to him by a New York brokerage firm (the "replacement check") and sent the check by Federal Express to Friendly Bank for deposit into Danner's account. The replacement check was drawn on Bankers' Trust, New York and represented good funds. Danner's bank received the replacement check on October 31, 1987. Following the instruction on the back of the replacement check, Danner's bank immediately forwarded it for collection to the issuing bank. However, due to the absence of a necessary endorsement by Danner's bank, the collection of this check was delayed. Ultimately, the endorsement was added and the check cleared, making funds available on December 7, 1987.

In the interim, Danner discovered the situation upon his return from overseas regarding the insufficient check and contacted his bank. Danner did not inquire as to whether the insufficient check had been replaced and the bank failed to inform Danner of the replacement check. Danner testified that he operated on the assumption that IMM had done nothing to cover the $10,000 insufficient check.

On November 2, Danner declared a default. Danner took an affidavit and notice of default to Security National Bank, the escrow agent, obtained the Bio–Cide stock and returned to his office with the stock. Danner did not give IMM notice that he was declaring default and repossessing the Bio–Cide stock.

Danner learned of the replacement check after declaring the default, but refused to place the stock back in escrow. On December 2, Danner sent a letter to his bank instructing the bank not to accept the funds for the replacement check. Thus, on December 7, when the funds representing

the replacement check arrived at Danner's bank, the bank refused to accept the funds.

Danner then brought this action to collect on the promissory note. IMM counterclaimed for wrongful repossession of the Bio–Cide stock and for failure to preserve the value of the stock. The case was tried before a jury. The jury returned a verdict (Verdict 1) in favor of Danner on his claim for default. The jury also returned verdicts (Verdict 2) in favor of IMM on both its counterclaims and awarded IMM $120,000 in total damages without apportioning the loss between the two claims.

Because the district judge was temporarily away from the courthouse when the jury returned its verdict, it was accepted by a United States Magistrate Judge. Upon returning, the district judge questioned the consistency of the default and wrongful possession verdicts and directed the parties to submit post-trial briefs on the consistency of the verdicts and related issues.

After receiving the briefs and hearing oral argument, the district court determined that the verdicts irreconcilably conflicted. The court then granted a j.n.o.v. in favor of Danner on IMM's counterclaim for wrongful repossession. The court left undisturbed the verdict in favor of Danner for default on the note and the defendant's verdict in the sum of $120,000, covering the damages for misuse of the collateral. This appeal followed.[1]

## II.

### A. Directed Verdict

■ Initially, IMM argues that the district court should have directed a verdict in its favor. When reviewing whether a verdict should have been directed, this court applies the same standard as applied by the trial court in passing on the motion initial-

ly. *Motive Parts Warehouse v. Facet Enters.*, 774 F.2d 380, 385 (10th Cir.1985). The trial court may direct a verdict only where the evidence and all inferences to be drawn therefrom are so clear that reasonable minds could not differ on the conclusion. The evidence must be viewed in the light most favorable to the party against whom the directed verdict is sought, and if, on the basis of the evidence and inferences to be drawn therefrom, reasonable and fair-minded persons might form different conclusions as to the facts in issue, a directed verdict is improper.

*Id.* at 385–86.

■ The trial court properly denied IMM's motion. The evidence and all inferences to be drawn therefrom are not so clear that reasonable minds could only conclude that IMM had not defaulted on the payment of the promissory note. Danner presented evidence at trial upon which a jury could have found that IMM was in default at the time Danner declared the default and repossessed the Bio–Cide stock. Accordingly, IMM was not entitled to a directed verdict.

### B. Conflicting Jury Verdicts

■ Alternatively, IMM argues that the district court erred in granting Danner j.n.o.v. rather than ordering a new trial. According to IMM, once the district court concluded that Verdict 1 and Verdict 2 irreconcilably conflicted, it should have granted a new trial. We agree and remand for a new trial.

■ A j.n.o.v., like a directed verdict, should only be granted where the evidence is such that a reasonable jury could only reach one conclusion. *Brown v. McGraw–Edison Co.*, 736 F.2d 609, 612–13 (10th Cir.1984). Here, the district court initially

---

1. Verdict 2 consisted of three parts: Part A asked the jury to determine whether Danner wrongfully repossessed the collateral; Part B asked the jury to determine whether Danner misused the Bio–Cide assets; and Part C asked the jury to specify the amount of damages if it found Danner liable on one or both of the counterclaims. The jury found Danner liable on both the counterclaim for wrongful reposses-sion and the counterclaim for misuse of Bio–Cide assets. The district court, in entering judgment, however, awarded IMM the entire $120,-000 for "misuse of Bio–Cide assets." Unless the district court mistakenly labelled "misuse of assets" to include damages for wrongful repossession, that award should stand. Otherwise, the district court may reconsider the amount of the counterclaim in part.

determined that the contractual language defining default was ambiguous and assigned to the jury the task of determining when and if a default occurred. Implicitly, the district court recognized that a reasonable jury could reach more than one conclusion.

The district court determined, and we agree, that the jury responded by giving irreconcilably conflicting verdicts. Under the jury instructions, in order for Danner to prevail, he had to show that IMM defaulted on the note. In contrast, in order for IMM to prevail on its counterclaim for wrongful repossession, it had to prove that it had *not* defaulted on the promissory note. The jury could not properly find for both parties, although that is what it did.

After determining that the jury's verdicts conflicted, however, the district court proceeded to grant Danner j.n.o.v. on the basis of the jury's determination in Verdict 1 that IMM had defaulted. According to the district court, "[o]nce the jury determined that a default had occurred and resolved that issue in the plaintiff's favor, the jury could not then find for the defendant/counterclaimant on its counterclaim for wrongful repossession since the plaintiff once a default had occurred had the right to take possession of the stock." *B.C. Danner v. International Medical Mktg.*, No. CIV–88–160–W, Order at 3–4 (W.D.Okla. Jan. 26, 1990).

Although the verdicts were numbered sequentially, neither the district court judge nor the judges on this court can know how or in which order the jury reached its verdicts. Thus, the resolution of this issue cannot depend merely on the numbering of the verdict forms. Accordingly, the verdicts do not justify the granting of a j.n.o.v. for Danner.

When the two verdicts, as well as the jury instructions, are read together, the inconsistencies in the verdicts become undeniably apparent and irreconcilable. Therefore, the district court should have ordered a new trial. *See Bonin v. Tour West, Inc.*, 896 F.2d 1260, 1263 (10th Cir. 1990) (per curiam); *Jarvis v. Commercial Union Assur. Co.*, 823 F.2d 392, 395–96 (10th Cir.1987).

C. Failure to Give Requested Jury Instructions

IMM argues that the district court's failure to instruct the jury on two theories of its case entitles it to a new trial. In light of our resolution of the above issue, we decline to reach these issues. On remand, the district court should renew its consideration of the proposed jury instructions in the context of the new trial.

III.

Accordingly, the judgment of the district court is reversed, except to the extent the court upheld the jury's imposition of liability against Danner for misuse of the collateral, and the case is remanded to the district court for action consistent with this opinion.

IT IS SO ORDERED.