**Richard E. JONES, Plaintiff,**

**v.**

**CITY OF TOPEKA, a Municipal Corporation; Douglas S. Wright, Individually and in his official capacity as Mayor of the City of Topeka; Ronald S. Miller, Individually and in his capacity as Chief Administrative Officer of the City of Topeka; Harry L. Felker, III, Individually and in his official capacity as Mayor of the City of Topeka, Defendants.**

**Civ. A. No. 89–4175–S.**

United States District Court,
D. Kansas.

April 27, 1992.

Richard E. Jones, Jones & Jones, Topeka, Kan., Gregory B. King, U.S. Dept. of Housing & Urban Development, Kansas City, Kan., for plaintiff.

Thomas E. Wright, Davis, Wright, Unrein, Hummer & McCallister, Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on oral motions by the plaintiff and all of the defendants for a directed verdict. These motions come at the end of the plaintiff's case-in-chief. The court has heard the arguments of counsel, reviewed the applicable documents and law and is ready to rule. The court first will address the defendants' motion.

## PROPERTY INTEREST

The defendants contend the plaintiff had no property interest in his employment as a matter of law, and, thus, was not entitled to due process of law pursuant to the Fourteenth Amendment. The right to procedural due process is dependent upon the existence of a property right in the employment. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985).

■ The first basis for the defendants' argument is that Charter Ordinance No. 65, which established the strong mayor-council form of government for the City of Topeka ("city"), supersedes the personnel rules and regulations that were in effect prior to the the Charter Ordinance. The Charter Ordinance purportedly provides that city employees may be terminated without cause. An employee-at-will has no expectation of continued employment and, therefore, no property interest. The defendants contend the plaintiff was subject to the Charter Ordinance and had no expectation of continued employment.

The Charter Ordinance contains two pertinent provisions to the issue currently before the court. First, the section outlining the powers and duties of the mayor reads as follows:

The mayor shall:

. . . . .

Appoint, promote, transfer, assign and demote, discipline, lay off, suspend, discharge or remove all appointive officers and employees of the city except as otherwise provided by applicable Kansas statutes. All such appointive officers and employees shall be subject to demotion, lay off, suspension, discharge and removal without cause, except as otherwise provided in any negotiated memorandum of agreement, any applicable civil service regulation, or the administrative code and the personnel code.

The Charter Ordinance also provided the following:

The council shall adopt and when necessary revise a personnel code providing a comprehensive personnel system for

appointive officers and employees. The personnel code may authorize the mayor or personnel director to promulgate regulations dealing with personnel matters. The personnel code and any regulations promulgated pursuant thereto shall be consistent with this charter ordinance.

The city contends, in its written brief, the rules and regulations, which the plaintiff cites as evidence he was not provided due process, were enacted prior to the Charter Ordinance and are inconsistent with the Charter Ordinance. Therefore, the Charter Ordinance controls. After evidence was presented at trial that, in fact, the city continued to utilize some portions of the personnel rules and regulations, the defendants now argue that, to the extent the rules are inconsistent with the Charter Ordinance, the Charter Ordinance controls.

The defendants admit that they have continued to use portions of the personnel rules and regulations. Further, in the plaintiff's letter of termination the city cites to the rules and regulations. The city also admits that it promulgated no new rules and regulations after the Charter Ordinance was passed. The city's argument is that it only used sections of the rules and regulations which were not inconsistent with the Charter Ordinance. On these facts, the court finds the Charter Ordinance did not supersede the rules and regulations. Therefore, even if the plaintiff was the type of employee for which the Charter Ordinance provided no property interest in employment, because of the extensive continued use of the personnel rules and regulations, the Charter Ordinance did not control in this case.

■ The next question for the court is whether the personnel rules and regulations created an implied contract from which the court can find that the plaintiff had a property interest in his employment. It is well settled that the Constitution does not create property rights, but rather such rights arise from independent sources including municipal ordinances or charters, state statutes, or implied or express agreements. *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *Carnes v. Parker*, 922 F.2d 1506, 1509 (10th Cir.1991).

This court must turn to state law to determine whether Kansas would recognize a right to continued employment on these facts. Specifically, this court must decide "whether the Kansas Supreme Court would find a property interest under the facts of this case." *Harris v. Board of Pub. Utilities of Kansas City*, 757 F.Supp. 1185, 1190 (D.Kan.1991).

■ Kansas is an employment-at-will state, so that, in the absence of a contractual agreement covering the term of employment, the employee can have no expectation of continued employment. *Johnson v. National Beef Packing Co.*, 220 Kan. 52, 551 P.2d 779 (1976). In *Morriss v. Coleman Co., Inc.*, 241 Kan. 501, 738 P.2d 841 (1987), the Kansas Supreme Court recognized that an implied contract could create a right to continued employment.

■ A recent case from the United States District Court for the District of Kansas addressed a very similar factual situation. In *Harris v. Board of Pub. Utilities of Kansas City*, 757 F.Supp. 1185, the court addressed the question of whether the Board of Public Utilities Personnel Code created an implied contract for the purpose of determining whether there was a property interest. In the disciplinary section of the code, there was a statement regarding the purpose of maintaining discipline and then a listing of 33 infractions requiring certain types of discipline and procedures. Each offense carried a certain prescribed procedure and penalty. The guide also stated, " '[t]hese rules are not considered or intended to include all situations where disciplinary action may be required.' " 757 F.Supp. at 1191.

The court found that there was nothing in the code warranting a belief that the employees had an expectation of continued employment with the board. *Id.* Further, in the absence of language limiting the board's right to terminate the employees-at-will, the court found no contract could be implied. *Id.*

A recent Tenth Circuit Court of Appeals opinion, applying Oklahoma law,[1] also addressed whether a personnel manual providing some grounds for termination could be interpreted to create a right to continued employment. *Carnes v. Parker*, 922 F.2d 1506 (10th Cir.1991). The court found that the manual did not expressly state discharge was only allowed for cause. *Id.* at 1511. Therefore, interpreting Oklahoma law, the court determined they could not "imply from a list of grounds for termination or a simple reference to possible disciplinary action any contractual right *promising* continued employment." *Id.*

In the instant case, the first portion of the personnel rules and regulations under the heading "CORRECTIVE AND DISCIPLINARY ACTIONS" sets forth a general policy statement: The pertinent portions read as follows:

> It shall be the duty of all employees to maintain high standards of conduct, cooperation, efficiency and effectiveness in their work. Department heads and supervisors shall organize and direct the work of their units in a manner calculated to achieve these objectives. Whenever work habits, attitude, production or personal conduct of an employee falls below acceptable standards, supervisors *shall* point out the deficiencies as soon as practicable. Corrections and suggestions should be made in a constructive and helpful manner; and the doctrines of progressive, consistent, reasonable discipline *shall* be followed. (Emphasis added by the court.)

The rules and regulations further provide that adverse actions *"shall"* be documented and explained to the affected employee. In a later section, the rules and regulations provide a list of infractions which could warrant suspension or discharge, but the preface states, "[t]he list of offenses presented herein does not purport to be all-inclusive."

The court finds the factual situation presented in this case differs from the personnel codes examined in the cases cited above. These regulations mandate certain procedures and disciplinary action anytime an employee is performing below standard, whether it is the employee's attitude and conduct or his work performance. Therefore, all employees who are not meeting the city's acceptable standard for work performance are entitled to an explanation and progressive discipline. Certain violations may result in immediate discharge or suspension, but the regulations certainly imply that, in those situations, there must be just cause. To find no expectation to continued employment in this case would be to find that an employee performing in a sub-standard manner has more rights than an employee who is performing satisfactorily, but whom the city wishes to terminate without cause.

Further, while the list of offenses warranting discharge or suspension is not contemplated to be all-inclusive, it is a list of offenses and merely leaves open the possibility that there may be other *offenses* which warrant discharge or suspension. This again implies that just cause is required for termination.

The court recognizes that there is no direct language in the personnel rules and regulations requiring just cause for termination or limiting the city's right to discharge its employees at will. The court finds, however, that these rules and regulations imply just cause is required for the city to terminate its employees. To find otherwise, would be to reach a nonsensical and rigid conclusion. Accordingly, the court finds the plaintiff had a property interest in his employment and the defendants' motion for a directed verdict on this basis will be denied.

■ The defendants further contend that even if the plaintiff had a property interest in his employment, they are entitled to a directed a verdict because the plaintiff was told the reasons for the discharge and had an opportunity to present his side of the

---

**1.** Oklahoma is also an employment-at-will state, which recognizes that a personnel manual may set forth conditions that alter the at-will relationship between employer and employee. *Hinson v. Cameron*, 742 P.2d 549 (Okla.1987).

matter. .Thus, the due process, pretermination hearing requirement was satisfied.

■ This court may grant a directed verdict only where the evidence and all inferences to be drawn from the evidence, when viewed in the light most favorable to the party against whom the verdict is sought, are such that reasonable minds could not differ as to the conclusion. *Danner v. International Medical Marketing, Inc.,* 944 F.2d 791, 793 (10th Cir.1991). If reasonable minds could reach different conclusions regarding the facts in issue, a directed verdict should not be granted. *Id.*

The court finds the evidence presented at trial is conflicting and reasonable persons could differ as to whether the plaintiff was afforded due process. Therefore, the court will deny the defendants' motion for a directed verdict on this basis.

## QUALIFIED IMMUNITY

■ The individual defendants, Douglas S. Wright, Ronald S. Miller, and Harry L. Felker, III, also contend they are entitled to a directed verdict in their individual capacities on the plaintiff's due process claim, because they were shielded by qualified immunity.

"The test for qualified immunity is whether defendants violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Powell v. Mikulecky,* 891 F.2d 1454, 1456 (10th Cir.1989) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 [1982] ). The rationale for the standard is that, if the statutory or constitutional rights were not clearly established so that an official could reasonably anticipate the legal consequences of his actions, then the official could not be said to have knowingly violated the law. *Id.*

The question for this court is whether the plaintiff's property right in his job was so clearly established that the individual defendants should have known the plaintiff was entitled to a pretermination hearing pursuant to *Cleveland Bd. of Educ. v.*

*Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

As demonstrated by the court's analysis above, the Charter Ordinance purported to establish employment at will for certain of the city's employees. The rules and regulations did not explicitly state that city employees could only be fired for just cause. The court has found that the plaintiff had a property right in his employment, but this was by no means a *clearly* established right. There was obviously much confusion regarding the continued use of the personnel rules and regulations. Accordingly, the court finds that the individual defendants are entitled to qualified immunity on the plaintiff's due process cause of action.

## EQUAL PROTECTION

■ The defendants also contend they are entitled to a directed verdict on the plaintiff's claim that his discharge was motivated by racial discrimination. The defendants contend there is absolutely no evidence of racial animus and their motion must be granted.

The plaintiff contends he has shown that he is black, he was employed by the city, his job performance was satisfactory, he was discharged from his employment, and a white attorney was hired to take his place. Further, the other three attorneys, all white, who worked on the real estate contracts at issue in this case were not terminated for their performance on the contracts. He further contends the defendants have shown no legitimate business reason for the termination. The defendants counter this and allege they have presented legitimate reasons for the plaintiff's termination.

■ The burden is on the plaintiff to prove by a preponderance of the evidence that his firing was motivated by reason of his race. *Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Because employers are not inclined to admit such a charge, proof of discrimination may be indirect. *Drake v. City of Fort Collins,* 927 F.2d 1156, 1160–61 (10th Cir.1991).

Based upon the evidence presented during plaintiff's case in chief, the court finds that a factual issue has been created and reasonable minds could differ as to why the plaintiff was discharged from his job. Therefore, the court finds a directed verdict is improper on this issue and the question must go to the jury.

### PLAINTIFF'S MOTION

Because reasonable minds could differ on the conclusions to be reached by the evidence presented thus far at trial, the plaintiff's motion for a directed verdict also will be denied.

### CONCLUSION

To summarize, the court finds that the motions for directed verdicts will be denied on all grounds, except the individual defendants, Douglas S. Wright, Ronald S. Miller, and Harry L. Felker, III, will be granted a directed verdict on the plaintiff's due process claim.

IT IS BY THE COURT THEREFORE ORDERED that the defendants' motion for a directed verdict is denied in part and granted in part consistent with this order.

IT IS FURTHER ORDERED that the plaintiff's motion for a directed verdict is denied.