No. 30,128.

In re A. J. Giltner, *Petitioner*, v. Albert G. Becker, as Sheriff of Wyandotte County, *Respondent*.

(298 Pac. 780.)

Opinion filed May 9, 1931.

*J. H. Brady* and *N. E. Snyder,* both of Kansas City, for the petitioner.

*Fred R. White,* county attorney, for the respondent; *J. E. McFadden* and *O. Q. Claflin, Jr.,* both of Kansas City, of counsel.

The opinion of the court was delivered by

Hutchison, J.: This is an original proceeding in habeas corpus which calls in question the jurisdiction and power of the district court of Wyandotte county to commit the petitioner for indirect contempt. It involves the power and authority of the district court to issue a restraining order and punish the petitioner, who was one of the defendants in the injunction suit, for violation thereof.

The sheriff, as respondent in the habeas corpus proceeding in this court, has filed a motion to dismiss the proceeding for two reasons: first, that the petitioner is not entitled to maintain the action for the reason that he has a full, complete and adequate remedy at law, namely, by appeal to this court from the judgment of the trial court

where he was found guilty of contempt; and second, because the injunction and contempt proceedings show the district court had jurisdiction and the petitioner cannot maintain this action.

It is not claimed that the case comes under the inhibition of R. S. 60-2213, but it is urged on the strength of the holding in the case of *In re Smith, Petitioner*, 52 Kan. 13, 33 Pac. 957, and other similar decisions that since the petitioner has a full, complete and adequate remedy by appeal he is not entitled to the use of the special and extraordinary remedy of habeas corpus. The case cited recognized the right of the supreme court to examine the judgment or order in contempt proceedings and under certain circumstances discharge the petitioner.

In the case of *In re Spaulding*, 75 Kan. 163, 88 Pac. 547, where the defendant had been convicted of and sentenced for larceny, the court said:

"We are prohibited by section 5167 of the General Statutes of 1901 from inquiring into the legality of any judgment of a court of competent jurisdiction in a habeas corpus proceeding for the purpose of correcting mere errors or irregularities which may be appealable. But where a court, having jurisdiction of the person and of the subject matter, exceeds its power and pronounces a judgment not authorized by law—a void judgment—relief may be granted in a habeas corpus proceeding." (p. 165.)

The most recent expression of the court on this subject is in the case of *In re Bolman*, 131 Kan. 593, 292 Pac. 790, where the petitioner was charged with and held for bastardy in another and different county than that in which he and the prosecuting witness resided, and the court held:

"Habeas corpus will lie to inquire into the legality of one in custody under the order of a lower court when the question raised is the jurisdiction of the court to issue the order." (Syl. ¶ 1.)

Did the district court of Wyandotte county in the instant case have jurisdiction to issue a restraining order, for the violation of which the petitioner was found guilty of contempt, fined and committed to jail?

To the motion of the respondent to dismiss this proceeding is attached a copy of all the papers connected with the injunction and contempt matters, also a copy of some evidence and the admissions on the hearing upon the citation for contempt, and from these we learn directly the allegations of the petition, the features of the restraining order, the admitted violation thereof and the finding and judgment of contempt.

The restraining order, addressed to and served upon the petitioner and other defendants in the case, among other things, restrained him and them from "picketing plaintiff's place of business as in said plaintiff's petition set forth, and from the use or attempted use of stink bombs in connection with plaintiff's said business, and from the posting of notices or placards in connection with plaintiff's business, and from engaging in any other instrumentalities detrimental to plaintiff's business, and from carrying or displaying any placard referring to plaintiff or his business, or to in anywise come upon or near the premises of the plaintiff for the purpose of picketing or displaying any placard or other evidence and statement to the effect that plaintiff is unfair to organized labor, and in anywise interfering with the conduct of plaintiff's business."

An accusation was filed and an order of citation was issued, and to the former was attached a copy of a circular which it was alleged and admitted petitioner distributed. The answer of the defendant, petitioner here, was a general denial, a special denial as to willful and contemptuous refusal to obey orders of the court, and the following allegation:

"Further answering, defendant alleges that the subject matter of this action involves and grows out of disputes concerning terms or conditions of employment, and is wholly between employer and employee, between employees, and between persons employed and persons seeking employment."

The circular alleged and admitted to have been distributed by the defendant (petitioner) near the plaintiff's place of business, was entitled: "No. 3 Series—So the Public May Know," and contained several definitions of a scab and concluded with the following:

"When you see this emblem in a theater—

I A T S E

498

"You know the operators are *union men* and are getting a living wage. *The Electric, Granada, Home, 10th Street* and *Midway theaters employ union operators who are eligible to display this emblem.*"

It further appeared in the evidence that the petitioner had been in the employ of the plaintiff prior to October 15.

The injunction action was commenced on January 15 by the plaintiff, the owner and proprietor of the Art Theater and engaged in the operation of a moving-picture theater at that place. Most of the defendants in the injunction case are associations and or-

ganizations of theater employees and a local union of such and its officers. The defendant petitioner and a few others are named as individuals, and are alleged to be outsiders and not employees of the plaintiff, seeking to compel the plaintiff to pay a higher scale of wages.

The finding of the trial court was in effect that the distribution of the circular was in violation of the restraining order and that the defendant, as an ex-employee, did not come within the exemption of the statute, R. S. 60-1104 and 60-1107, providing that no injunction shall be issued in any case between employer and employees growing out of a dispute concerning terms and conditions of employment without the giving of a previous notice. The statute imposes other requirements in such cases and makes some exceptions with which we are not concerned in this case.

The very evident theory of the plaintiff in the injunction case was to avoid coming under this statute, and his allegations as to the defendants being outsiders are perhaps sufficient for that purpose, but the answer of this defendant to the accusation raised an issue on that question as to the relation of the parties and emphasized the nature and character of the dispute as being one concerning terms and conditions of employment. The allegations of the petition and the contents of circular No. 3 confirm this as to the matter in dispute being one concerning terms and conditions of employment, and the undisputed evidence as to the relation of the parties is that defendant had been in the employ of the plaintiff prior to October 15—three months before the issuing of the restraining order which was issued the same day the petition was filed and without any notice to the defendant.

The case of *Bull v. International Alliance*, 119 Kan. 713, 241 Pac. 690, was very similar to this case in most particulars, the important distinction being that in it no individuals were named as defendants. All the defendants were associations and organizations of theater employees and their officers, and it was there said:

"This statute [R. S. 60-1107] has been regarded as applying only to cases between the parties specifically named; that is, between employers and employees, between employees, and between persons employed and persons seeking employment. The defendants in this case do not fall within any of the classes stated. The action was between one owning and operating a theater and certain labor organizations. The defendants were not employed by plaintiff or seeking to be employed, but were outsiders seeking to compel plaintiff to pay higher wages to those he had employed or might employ,

and therefore defendants cannot be considered as coming within the provisions of the statute." (p. 716.)

Does the defendant as an ex-employee fall within the provisions of this statute? Our legislature almost literally copied this section from the federal statute when it enacted the law in this state in 1913, it being chapter 233 of the session laws of that year. There are two federal decisions holding that an ex-employee comes within the terms of the federal statute.

In the opinion in the case of *Duplex Co. v. Deering*, 254 U. S. 443, where section 20 was being construed as applied to two individuals who were named as such and also as representatives of other members of the organization, it was said:

"Full and fair effect will be given to every word if the exceptional privilege be confined—as the natural meaning of the words confines it—to those who are proximately and substantially concerned as parties to an actual dispute respecting the terms or conditions of their own employment, past, present or prospective." (p. 472.)

Section 20 corresponds to our R. S. 60-1107.

In an opinion written by Chief Justice Taft in the case of *Amer. Foundries v. Tri-City Council*, 257 U. S. 184, it was said:

"Only two of the defendants, Cook and Churchill, who left at the time of the strike, can invoke in their behalf § 20. . . . It is clear that congress wished to forbid the use by the federal courts of their equity arm to prevent peaceable persuasion by employees, discharged or expectant, in promotion of their side of the dispute, and to secure them against judicial restraint in obtaining or communicating information in any place where they might lawfully be. . . . The object and problem of congress in § 20, and indeed of courts of equity before its enactment, was to reconcile the rights of the employer in his business and in the access of his employees to his place of business and egress therefrom without intimidation or obstruction, on the one hand, and the right of the employees, recent or expectant, to use peaceable and lawful means to induce present employees and would-be employees to join their ranks, on the other." (pp. 202, 203.)

We conclude that the petitioner, defendant in the injunction action, an ex-employee, having been an employee of the plaintiff until three months before the issuing of the restraining order, was such as to come within the provisions of the statute against whom a restraining order could not be issued in a matter involving a dispute concerning terms or conditions of employment without a previous notice as provided in R. S. 60-1104 and 60-1107, and because the restraining order was issued against him without such notice and without the necessary allegations to bring the case under

any of the exceptions to the general rule, the order was issued without jurisdiction or authority and was void. Under such circumstances there can be no question of the right of the petitioner to apply for a writ of habeas corpus, regardless of the fact that his remedy by appeal might be full, complete and adequate; and because the restraining order was issued without jurisdiction or authority, it was void, and the petitioner should not be held for contempt for a violation of such order.

The writ of the petitioner should be allowed. It is so ordered.