· No. 35,203

BENTON E. SWART, *Appellant*, v. W. P. HUSTON, doing business as Kansas Theatre, *Appellee*. ·

(117 P. 2d 576)

Opinion filed October 11, 1941.

*Charles F. McClintock, Harold H. Malone* and *L. C. Gabbert,* all of Wichita, for the appellant.

*Glenn Porter, Getto McDonald, Dwight S. Wallace, William Tinker, Z. Wetmore, George M. Ashford* and *Waldo B. Wetmore,* all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action by a member of a labor union against his employer for damages for alleged breach of a labor contract between the employer and a labor union of which the plaintiff was a member.

The action originated in the city court of Wichita. The pleadings were plaintiff's bill of particulars, to which was attached a copy of the contract between the defendant employer and the labor union. Defendant joined issues by demurrer. The city court gave judg-

ment in plaintiff's favor. Defendant appealed to the district court, where three of the district judges heard the cause and held that defendant's demurrer should be sustained and gave judgment accordingly.

Plaintiff brings the matter here for further review.

It appears that on March 9, 1939, defendant Huston operated a playhouse in Wichita under the trade name of "Kansas Theatre." On that date he entered into a contract with a labor union styled "Local No. 414 of the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada." This contract was to run until August 31, 1940. By its terms the union agreed to furnish whatever motion picture operators (named projectionists) defendant might require. Defendant agreed to employ no operators except those supplied by the union; and it was agreed that if the services of any operator were unsatisfactory to defendant, the union was to have an opportunity to adjust or correct that situation. Defendant agreed to pay the operator supplied by the union according to a specified wage scale of $39.60 for a six-day week of six-hour days, with additional pay for overtime and other details of no present concern. One paragraph of the contract provided that if the theater should be closed and defendant in consequence should desire to dispose of the services of the operator supplied by the union he would give him two weeks' notice or "pay two weeks' salary in lieu thereof."

Plaintiff's bill of particulars alleged that he was a member of the union with which defendant had contracted in March, 1939, as summarized above, and that at the instance of the union he took up his abode in Wichita and became the operator and employee of defendant and so continued until December 20, 1939—

"At which said time the defendant refused to further employ plaintiff and to comply with the terms of said contract."

Plaintiff further alleged that he had fully complied with all the terms of the contract made by the union of which he was a member, and that there was due him as wages from December 20, 1939, until March 16, 1940 (when this action was begun), the sum of $518.40, for which amount plaintiff prayed judgment.

It was stated in oral argument before this court that the severance of the relationship of employee and employer came about by defendant selling out and retiring from the theater business.

When the case reached the district court it was held that defend-

ant's demurrer to plaintiff's bill of particulars should be sustained; and that ruling is the basis of this appeal.

Counsel for plaintiff opens his argument with excerpts from decided cases which give judicial countenance to the policy of collective bargaining between employers and authorized representatives of labor organizations. By statute this state gave express sanction to the practice of collective bargaining many years ago. (Laws 1920, ch. 29, § 14; G. S. 1935, 44-614; *State, ex rel., v. Howat,* 109 Kan. 376, 395, 415, 416, 198 Pac. 686.) Earlier legislative recognition of the right of labor to organize, act and bargain collectively is clearly implied in our statute of 1913, G. S. 1935, 60-1107, which prohibits the granting of injunctions in disputes between employers of labor and their employees. (*Giltner v. Becker,* 133 Kan. 170, 298 Pac. 780.)

But a collective bargain between an employer of labor and a labor union does not ordinarily constitute a contract of employment between the employer and any individual member of that union. He and his employer make their own contract, impliedly at least, if not expressly. The collective bargain between employer and union outlines the general conditions under which the business shall be conducted in respect to wages, hours of labor, working conditions, and matters incidental thereto. Ordinarily the collective bargain does not of itself make a contract of employment between A as employer and B as workman which either can enforce, or which will furnish the basis for an action for damages if it is breached. This is settled textbook doctrine. Thus in the article on Labor, 16 R. C. L. 425, it is said:

"It has been pointed out that the ordinary function of a labor union is to induce employers to establish usages in respect to wages and working conditions which are fair, reasonable and humane, leaving to each of its members to determine for itself whether and for what time he will contract with reference to such usages. It has therefore been decided that a labor union, in contracting with an employer with respect to wages and conditions of service for a specified period of time, does not establish contracts between its individual members and the employer, a breach of which will sustain actions by the individuals."

Supporting this statement of law are *Hudson v. C., N. O. & T. P. Ry. Co.,* 152 Ky. 711, 154 S. W. 47, 45 L. R. A., n. s., 184; *Piercy v. L. & N. R. Co.,* 198 Ky. 477, 248 S. W. 1042, 33 A. L. R. 322 and annotation; *Southern Ry. Co. v. Morris,* 210 Ala. 463, 98 So. 387; *Panhandle & S. F. Ry. Co. v. Wilson,* (Tex. Civ. App.) 55 S. W. 2d, 216; *Kessell v. Great Northern Ry. Co.,* 51 F. 2d, 304. In *Yazoo &*

*M. V. R. Co. v. Webb,* 64 F. 2d, 902, where the court had occasion to consider the scope of a contract between a railway company and a labor union, it was said:

"An agreement upon wages and working conditions between the managers of an industry and its employees, whether made in an atmosphere of peace or under the stress of strike or lockout, resembles in many ways a treaty. As a safeguard of social peace it ought to be construed not narrowly and technically but broadly and so as to accomplish its evident aims and ought on both sides to be kept faithfully and without subterfuge. In no other way can confidence and industrial harmony be sustained. But in itself it can rarely be a subject of court action because it is incomplete. It establishes no concrete contract between the employer and any employee. No one is bound thereby to serve, and the employer is not bound to hire any particular person. It is only an agreement as to the terms on which contracts of employment may be satisfactorily made and carried out. It is a mutual general offer.to be closed by specific acceptances. When negotiated by representatives of an organization it is called collective bargaining, but ordinarily the laws of the organization, which constitute the authority of the representatives to act, do not require the individual members to serve under it, but only that if they serve they will do so under its terms and will join in maintaining them as applied to others. When the agreement is published by the managers, it becomes until abrogated the rule of that industry and any individual who thereafter continues in its employment or takes new employment takes it on the terms thereby fixed. Ordinarily, as in this case, there is no period fixed for the hirings and they are at the will of the parties, the employer having the right to discharge at any time and the employee having the right to quit." (p. 903.)

In *Louisville & N. R. Co. v. Bryant,* 263 Ky. 578, 92 S. W. 2d, 749, the action was by two railway employees who had been discharged by their employer. Plaintiffs invoked certain provisions of the collective bargain between their employer and the labor union to which they belonged. But the court adhered to the rule it had theretofore laid down in earlier cases, cited above—that a breach of contract between a labor union and an employer gave no cause of action to an individual member of the union aggrieved thereby. The redress, if maintainable, must be invoked by the union itself, even if, as said by Lord Russell of Killowen in *Young v. Canadian Northern Ry.,* cited in the Kessell case, *supra,* the effective sequel must be a strike until the grievance is remedied. In the Bryant case, *supra,* the Kentucky Court of Appeals took note that its own decisions and the general current of authority were at odds with the decisions of the supreme court of Nebraska in *Rentschler v. Missouri P. R. Co.,* 126 Neb. 493, 253 N. W. 694, 95 A. L. R. 1 and annotation, pages 10-56.

We have read that Nebraska case with much interest. One excerpt from its text is quite pertinent. It reads:

"In itself, the collective contract is rarely subject to a court action because it is incomplete. It establishes no concrete contract between the employer and any employee. No one is bound thereby to serve, and the employer is not bound to hire any particular person. It is only an agreement as to terms on which contracts of employment may be satisfactorily made and carried out. It is a mutual general offer, to be closed by specific acceptance. When negotiated by representatives of an organization, it is called collective bargaining, but ordinarily the laws of the order do not require the members to serve under it, but only that if they serve they will do so according to its terms." (p. 500.)

One difficulty which would confront this court before we could apply this Nebraska decision to the case before us would be to find a good answer to the simple and obvious point that in the case at bar there was nothing in the collective bargaining agreement between the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada and the defendant, which bound the plaintiff to work for defendant for any definite length of time. So far as the contract between plaintiff's union and defendant was concerned plaintiff was privileged to quit whenever he should see fit. How then could it be held that defendant had no right to discharge plaintiff whenever he chose to do so and that he should be penalized for so doing? In *Grow v. Davis*, 110 Kan. 214, 203 Pac. 683, the action was to compel performance of a contract to execute an oil and gas lease. The contract failed to include any mutual or reciprocal obligation between the parties and was therefore unenforceable. Other familiar cases of this court dealing with imperfect obligations have been to the same effect. (*Fitzstephens v. Whan*, 113 Kan. 650, 216 Pac. 269; *Van Deren v. Heineke & Co.*, 122 Kan. 215, 252 Pac. 459; *Sharpless v. J. B. Kirk Gas & Smelting Co.*, 128 Kan. 722, 280 Pac. 788, and citations.)

Nothing is more common than enforceable contracts made for the benefit of a third party, and it would appear to be quite feasible for the collective bargain between a labor union and an employer to include details defining the mutual or reciprocal obligations of the employee and employer toward each other, with some provision to show that the employee had agreed to be personally bound by its terms. (31 Am. Jur. 880, 881.) Nothing of that kind is involved in the collective bargain submitted for our consideration in this action.

We have not failed to notice the cases cited by plaintiff which give judicial countenance to labor organizations seeking enforcement of their collective bargains with employers. (*Leow's Enterprises, Inc., v. International Alliance of T. S. E.*, 125 Conn. 391, 6 Atl. 24 321; *Theatres Corp. v. Local Union No. 615,* 174 Miss. 439, 164 So. 887; *Murphy v. Ralph,* 165 Misc. 335, 299 N. Y. S. 270.) None of them is helpful to a determination of the case we are considering. In another case cited by plaintiff, *Gulla v. Barton,* 164 App. Div. 293, 149 N. Y. S. 952, the employer and his employee, a member of a labor union, did have an individual contract of employment at wages which were less than the union scale to which the employer had assented. When the employee discovered that he was being paid less than the union scale he sued for the difference and recovered. A righteous judgment, without doubt, but it has no bearing on the case at bar.

There is no error in the record and the judgment is affirmed.