Luanna DAVIS, Plaintiff,

v.

LUMACORP, INC., Defendant.

Civil Action No. 96–2527–EEO.

United States District Court,
D. Kansas.

Jan. 9, 1998.

Donald C. Long, Kansas City, KS, for Plaintiff.

John J. Yates, Robert J. Hoffman, Nicole T. Bock, Bryan Cave LLP, Kansas City, MO, Lynn S. McCreary, Bryan Cave LLP, Overland Park, KS, for Defendant.

### MEMORANDUM AND ORDER

EARL E. O'CONNOR, Senior District Judge.

This matter is before the court on the defendant's motion for summary judgment (Doc. # 20). Plaintiff Luanna Davis brought this breach of contract action after she was terminated from her employment with defendant LumaCorp, Inc. ("LumaCorp"). Defendant now seeks summary judgment on the grounds that the uncontroverted facts show no contract of employment existed between Davis and LumaCorp. Defendant further contends that even if a contract of employment did exist, LumaCorp properly terminated Davis in accordance with the terms of the contract. The matter is now ready for ruling. For the reasons stated below, the motion is granted.

### I. Standards for Summary Judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Hicks v. Watonga, 942 F.2d 737, 743 (10th Cir.1991). Essentially, the inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52. An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. Id. at 248. This inquiry necessarily implicates the substantive evidentiary standard of proof that would apply at trial. Id. at 252.

Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on her pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 793 (10th Cir. 1988). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Anderson, 477 U.S. at 256. Where the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for

purposes of the summary judgment motion. D. Kan. Rule 56.1.

## II. *Factual Background.*

For purposes of this motion, the court finds that the following material facts are uncontroverted, pursuant to Federal Rule of Civil Procedure 56 and our Local Rule 56.1:[1]

Plaintiff Luanna Davis resides in Kansas City, Missouri. Defendant LumaCorp is a Texas corporation with its principal place of business in Dallas, Texas. Brookstone Apartments ("Brookstone") is an apartment complex located in Kansas City, Kansas. Prior to August 1994, Brookstone was managed by various entities, including Creekside Partners, Cohen Esrey, and Hale–Ashner.

In August 1994, LumaCorp was hired to manage Brookstone. As property manager, LumaCorp was responsible for all aspects of the apartment complex, including: maintaining the physical structure and grounds, collection and processing of rents, soliciting tenants and other aspects of tenant occupancy, responding to tenant problems, as well as the hiring, firing, and training of personnel. After assuming management responsibilities of Brookstone, LumaCorp interviewed and hired Davis for the position of Resident Manager.

At the time she began her employment with LumaCorp, Davis completed and executed an application for employment. A portion of the employment application stated:

> I UNDERSTAND AND AGREE THAT, IF HIRED, MY EMPLOYMENT IS FOR NO DEFINITE PERIOD AND MAY, REGARDLESS OF THE DATE OF PAYMENT OF MY WAGES AND SALARY, BE TERMINATED AT ANY TIME WITHOUT PRIOR NOTICE AND WITHOUT CAUSE.

Davis thoroughly read and completely understood the employment application upon execution.

Since June of 1990, but prior to LumaCorp's management, Davis had been employed at the Brookstone apartment complex by three different entities. Davis had never been employed pursuant to an employment contract. During her employment with each of the three management entities that preceded LumaCorp, Davis believed that she could terminate her employment at any time, and that her employer could terminate her employment at any time.

Davis did not have a written contract of employment with LumaCorp. According to Gayle Northrup, Vice–President of Property Management for LumaCorp and Davis' supervisor, it was the intent of LumaCorp, as reflected by the language in the employment application, that there be no contractual relationship between LumaCorp and Davis, and that she be considered an employee-at-will. Davis admits that her employment status at LumaCorp was never modified by any subsequent agreement. The only fact Davis advances to support the existence of an implied contract is her assertion that she was guaranteed her job as long as she "did [her] job well."

Davis understood LumaCorp's policies, including those policies which mandated that issues relating to the property be communicated to management, and be maintained as confidential. On or about October 30, 1994, a security guard who worked at Brookstone was the victim of an off-premises murder. On or about October 30, 1994, Davis telephoned Gayle Northrup to advise her of the death of the employee. The next day, reporters with television crews from two Kansas City television stations arrived at the apartment complex, and Davis submitted to an on-camera interview with the reporters. After her statement to reporters, Davis failed to communicate their presence, or her submission to the interview, to LumaCorp. On November 2, 1994, Davis was terminated as a result of her violations of company policy.

## III. *Discussion.*

■ For her cause of action, plaintiff alleges that defendant breached an oral con-

---

1. A number of facts are deemed admitted because of plaintiff's failure to comply with the requirements of D. Kan. 56.1.

tract of employment. Pretrial Order, at 3. Plaintiff contends that the oral contract of employment provided that plaintiff would not be terminated, except for good cause. *Id.* She asserts that she was terminated for a reason other than good cause, because she spoke to the press about a matter of public interest. *Id.*

■ Kansas has long-recognized the doctrine of employment-at-will. *See Swart v. Huston,* 154 Kan. 182, 117 P.2d 576 (1941). The doctrine provides that, in the absence of an express or implied employment contract, covering the duration of employment, the employment is terminable at the will of either party, and the employee states no cause of action for breach of contract by alleging that he has been discharged. *Pilcher v. Board of Wyandotte County Comm'rs,* 14 Kan.App.2d 206, 209, 787 P.2d 1204, 1207 (1990); *Johnson v. National Beef Packing Co.,* 220 Kan. 52, 54, 551 P.2d 779, 781 (1976). The Kansas employment-at-will doctrine has been interpreted to mean that in the absence of an employment contract or an illegally motivated termination, an employee may be terminated for "a good reason, a bad reason, or no reason at all." *Morriss v. Coleman,* 241 Kan. 501, 738 P.2d 841 (1987).[2]

■ The existence of an implied employment contract is predicated upon the intent of the parties, and may not be created merely by the unilateral expectation of the employee. In *Harris v. Board of Public Utilities of Kansas City,* 757 F.Supp. 1185, 1190 (D.Kan.1991), we stated:

[A]n expectation to remain employed as long as one performs the duties of his or her employment properly is a unilateral expectation and does not, by itself, create a property interest in that employment. This is true even where that expectation is created by verbal or nonverbal communications of the employer.

*Id.* at 1190 (citing *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir.1988)).

■ Determination of the existence of an implied contract and the parties' intent is normally a question of fact for the jury, *Morriss,* 241 Kan. at 512, 738 P.2d at 848 (1987), and may require consideration of the following factors:

[the parties'] written or oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usages of the business, the situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time said employment commenced.

*Id.* 241 Kan. at 513, 738 P.2d at 849 (citing *Allegri v. Providence–St. Margaret Health Center,* 9 Kan.App.2d 659, syl. ¶ 5, 684 P.2d 1031 (1984)).

However, in the absence of evidence presented by the plaintiff sufficient to prove the existence of an implied contract, summary judgment is appropriate. *See Plummer v. Humana of Kansas, Inc.,* 715 F.Supp. 302, 303–04 (D.Kan.1988). *See also Conaway v. Smith,* 853 F.2d at 794 (affirming summary judgment for employer where employee failed to show specific facts from which an implied contract could be inferred). Kansas state courts likewise have granted summary judgment on the issue of implied contract in the absence of evidence to support the existence of a contract. *See, e.g., Dickens v. Snodgrass, Dunlap & Co.,* 255 Kan. 164, 872 P.2d 252 (1994).

Moreover, even if a plaintiff presents evidence of the existence of an implied contract, that evidence must be of a sufficient quality. *See, e.g., Pilcher v. Board of Wyandotte County Comm'rs,* 14 Kan.App.2d at 210, 787 P.2d at 1207–08 (although plaintiff testified that she believed her employer had in place a progressive discipline policy, and that this policy comprised an implied contract, court held evidence was insufficient to carry the issue to a jury, because the only evidence

---

**2.** Kansas courts recognize two exceptions to the employment at will doctrine. An employee may not be discharged: (1) for filing a workers compensation claim; or (2) under circumstances

where the discharge violates clear public policy. *Pilcher,* 14 Kan.App.2d at 209, 787 P.2d at 1207. Based upon the uncontroverted facts of this case, neither of these exceptions is applicable here.

plaintiff offered was her own testimony and testimony of former supervisor that employees believed they would receive three warnings before being fired; plaintiff was unable to support her theory with any written documentation or policy).

Here, plaintiff has presented the court no evidence that would support the existence of an implied employment contract with Luma-Corp. The undisputed facts reflect that in August 1994, plaintiff completed an application for employment with LumaCorp. Plaintiff does not dispute that she thoroughly read and completely understood the employment application prior to signing it. Plaintiff signed the application immediately beneath these words:

> I UNDERSTAND AND AGREE THAT, IF HIRED, MY EMPLOYMENT IS FOR NO DEFINITE PERIOD AND MAY, REGARDLESS OF THE DATE OF PAYMENT OF MY WAGES AND SALARY, BE TERMINATED AT ANY TIME WITHOUT PRIOR NOTICE AND WITHOUT CAUSE.

Plaintiff contends that "the continued maintenance of plaintiff's employment with each successive employer, [and] her meeting with defendant's representative" constitutes sufficient evidence of an implied contract. Plaintiff's Brief, at 3. However, the undisputed fact that plaintiff read and understood the above-quoted language in her employment application belies her claim that the parties intended to create an implied contract of employment. As this court observed in *Bullock v. Dillard Department Stores, Inc.*, 1992 WL 350229, *2 (D.Kan.1992):

> An unequivocal statement of intent to create an unqualified employment-at-will relationship removes any ambiguity regarding the intent of the employer. In addition, the act of bringing a disclaimer to the personal attention of an employee obviates

any legitimate expectation on the part of the employee that an employment contract be formed.

It is reasonable to assume, and plaintiff does not dispute, that the excerpted portion of her employment application was brought to her personal attention; she signed her name immediately beneath that provision of the application. Moreover, the specific language clearly evidences an unqualified intent to create an employment-at-will relationship. A more absolute declaration of intent on the part of LumaCorp to create an unqualified employment-at-will relationship is difficult to envision.

■ The court finds that plaintiff has failed to present any evidence, other than the following statement in her deposition, to support her allegation that an implied or oral contract of employment existed between the parties: plaintiff states that the Vice-President of Property Management of LumaCorp, Gayle Northrup, told her that she was guaranteed her job as long as she did her job and performed her duties. Such evidence is insufficient under Kansas law to create a question of fact as to the existence of an employment contract. *See Mitchell v. Coffey County Hospital,* 903 F.Supp. 1415, 1422–23 (D.Kan.1995) ("The rule to be drawn from the Kansas cases is that 'an employee cannot create a jury question by reliance on only one [*Morriss v. Coleman* ] factor, whether that be a statement in the policy manual or a statement from the employer.' ") (citing Worth and Landis, *Fire at Will? The Status of Judicially Created Exceptions to Employment–at–Will in Kansas,* 64 J.K.B.A. 22, 25 (1995)). *See also O'Loughlin v. The Pritchard Corporation,* 972 F.Supp. 1352, 1369 (D.Kan.1997) ("In Kansas an employee cannot create a question for the jury, however, by reliance on one [*Morriss* ] factor alone.") [3] Accordingly, defendant is entitled

---

**3.** Plaintiff asserts that "the continued maintenance of plaintiff's employment with each successive employer" constitutes additional evidence of an implied employment contract. While this court has previously held that longevity of plaintiff's employment with a single employer is an important consideration in determining whether an implied contract of employment existed, *see Whitten v. Farmland Industries, Inc.,*

759 F.Supp. 1522, 1541 (D.Kan.1991), this factor is inapplicable here. The record indicates that plaintiff was hired by LumaCorp in early August of 1994, and was fired by LumaCorp in early November of 1994. A three month employment relationship between the parties does not constitute compelling evidence of an implied employment contract.

to summary judgment on the issue of the existence of an employment contract.

■ Next, LumaCorp contends that even were we to determine that there is an issue of fact as to whether an employment contract exists, the uncontroverted facts demonstrate that plaintiff's termination was within the terms of the contract, and thus appropriate. Plaintiff acknowledged in her deposition that the contract of employment, as she understood it, included performance expectations, and that the contract required plaintiff to comply with company policies. Plaintiff further acknowledged in her deposition that if she failed to adhere to company policies, she was subject to termination. The undisputed facts reflect that plaintiff was aware of LumaCorp's confidentiality policy, and that she violated this policy by engaging in on-camera interviews with television reporters. The uncontroverted facts further reflect that plaintiff was aware of LumaCorp's policy requiring that issues relating to the property be communicated to management, and that she violated this policy by failing to advise her supervisor of matters relating to the property. Specifically, plaintiff admits that she failed to communicate to LumaCorp the fact that television reporters were on the premises and that she submitted to an interview. Indeed, in plaintiff's response to the motion for summary judgment, she specifically admits defendant's uncontroverted fact number 21, which states "Davis was terminated as a result of her violations of company policy on November 2, 1994." Thus, even if a contract existed, summary judgment is appropriate because the uncontroverted facts demonstrate that Davis' violation of company policy provided a basis for termination under the contract.

IT IS THEREFORE ORDERED that defendant LumaCorp's motion for summary judgment (Doc. # 20) is granted.