David HUGHES, Plaintiff,

v.

James KEATH, Melissa D. Thiesing, the Board of County Commissioners of the County of Neosho, Kansas, R.E. Clements, Vernon Shultz, and Donnie Yarnell, Defendants.

No. 03–4170–JAR.

United States District Court, D. Kansas.

Aug. 4, 2004.

Mark L. Bennett, Jr., J. Roger Hendrix, Bennett & Hendrix, LLP, Topeka, KS, for Plaintiff.

Wendell F. Cowan, Jr., Toby Jon Crouse, Shook, Hardy & Bacon L.L.P., Overland Park, KS, for Defendants.

## MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

ROBINSON, District Judge.

This matter comes before the Court on defendants James Keath, Melissa D. Thiesing, the Board of County Commissioners of the County of Neosho, Kansas, R.E. Clements, Vernon Shultz, and Donnie Yarnell ("defendants") Motion to Dismiss (Doc. 13). Defendants move to dismiss plaintiff David Hughes' claims of wrongful termination and violations of 42 U.S.C. § 1983 for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons stated below, defendants' motion is granted in part and denied in part.

### A. Legal Standard

A court may dismiss a complaint "for failure ... to state a claim upon which relief can be granted."[1] Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."[2] The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true.[3]

On a Rule 12(b)(6) motion, the court judges the sufficiency of the complaint accepting as true the well-pleaded factual allegations and drawing all inference in favor of the plaintiff.[4] The court construes the allegations in the light most favorable to the plaintiff.[5] These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that it has not alleged or that the defendants have violated the ... laws in ways that have not been alleged."[6] "If the facts narrated by the plaintiff 'do not at least outline or adumbrate' a viable claim, his complaint cannot pass 12(b)(6) muster."[7] Dismissal is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interest of justice.[8]

### B. Factual Background

Plaintiff David Hughes ("Hughes") was terminated from his position as a Neosho County Deputy Sheriff on December 18, 2002. Although Hughes' duties as Deputy Sheriff ceased on December 18, he still continued to collect payments from Neosho

---

1. Fed.R.Civ.P. 12(b)(6).

2. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citation omitted).

3. *Mounkes v. Conklin,* 922 F.Supp. 1501, 1506 (D.Kan.1996) (quotation omitted).

4. *Shaw v. Valdez,* 819 F.2d 965, 968 (10th Cir.1987).

5. *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir.1991).

6. *Associated Gen. Contractors v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) (citation omitted).

7. *Mounkes,* 922 F.Supp. at 1506 (citing *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988) (quotation omitted)).

8. *Id.*

County for compensatory time, accumulated sick leave, and vacation time until January 29, 2003. Hughes alleges that he was wrongfully terminated during a meeting with defendants James Keath ("Keath"), Neosho County Sheriff, and Melissa D. Thiesing ("Thiesing"), Neosho County Attorney. Keath and Thiesing asked for Hughes' resignation because he allegedly committed perjury during an investigation. Hughes avers that he attempted to contact both Keath and Thiesing concerning his termination, but that both refused to discuss the matter with him. Following his termination, effective January 20, 2003, Hughes filed a written grievance to the Board of County Commissioners of Neosho County ("Board") pursuant to the county employee grievance procedure. He also personally contacted the Board requesting that he be provided with the identity of the County's Equal Employment Opportunity ("EEO") Officer so that he could pursue a grievance with the EEO Officer and/or the Board. Hughes claims that the Board refused to identify the EEO Officer and that the refusal prevented him from employing the Neosho County grievance procedure.

Hughes further alleges that Keath and Thiesing wrongfully committed slander, libel, defamation, harassment, discouragement, and intimidation against him because of his refusal to resign at the December 18, 2002 meeting. Hughes contends that the defamatory statements have resulted in the denial of an opportunity for him to obtain other employment at a higher wage than he was earning at the time of his termination. Hughes further alleges that these defamatory statements and actions were taken with the full knowledge, approval, and encouragement of the Board.

Hughes claims that Keath and Thiesing willfully and maliciously made and published untrue statements to third persons regarding his past conduct and falsely accused him of criminal or improper conduct. The alleged false statements include the following:

1. On or about January 9, 2003, Keath and Thiesing disclosed to a newspaper reporter that Hughes lied on the witness stand and tampered with evidence in at least two pending drug cases, resulting in the dismissal of a number of pending drug cases;

2. On or about January 9, 2003, Keath and Thiesing disclosed to a newspaper reporter that Hughes improperly handled, tested, and destroyed evidence that could have exonerated a defendant in an unresolved drug case;

3. On or about May 13, 2003, Keath and Thiesing disclosed to a newspaper reporter that Hughes perjured himself on at least two different occasions; and

4. Between December 18, 2002, and May 3, 2003, Thiesing advised attorneys in approximately sixty-five cases that she was dismissing charges in those cases because Hughes had previously lied on the witness stand in one or more other cases so damaging his credibility as a witness that he could not be called to testify in the cases to be dismissed.

Hughes alleges that Keath and Thiesing should have known that disclosing this information to newspaper reporters would result in the publication of the material. Hughes further avers that because this information was made known to the general public, his reputation within the community has diminished and his ability to obtain employment as a law enforcement officer in the State of Kansas has been adversely affected.

## C. Discussion

### 1. Wrongful Termination

Defendants seek dismissal of Hughes' wrongful termination claims on the ground

that he has failed to allege any facts to rebut the legal presumption that his employment with Neosho County was at-will. Hughes counters that the at-will doctrine has eroded in Kansas such that exceptions to the doctrine now exist.

Kansas has long adhered to the doctrine of employment at-will.[9] Pursuant to the doctrine, "[i]n the absence of an express or implied employment contract, covering the duration of the employment, the employment is terminable at the will of either party, and the employee states no cause of action for breach of contract by alleging that he has been discharged."[10] Two exceptions to an at-will relationship are recognized by Kansas courts: implied-in-fact contracts and contracts that violate public policy.[11]

**a. Implied-in-fact contract**

■ The existence of an implied contract is normally a question of fact.[12] In determining whether an implied-in-fact contract exists, courts examine: (1) any written or oral negotiations; (2) the usages of the business; (3) the situation and object of the parties; (4) the nature of the employment; and (5) any other circumstances surrounding the employment relationship that would tend to explain or make clear the intention of the parties at the time the employment relationship commenced.[13] Thus, to identify the existence

of an implied-in-fact contract, the Court must scrutinize the relationship between Hughes and Neosho County.

The Neosho County employment manual ("manual"), which governed Hughes' employment, explicitly states that his employment was terminable at-will by either party.[14] But, the manual also provides certain procedures for grieving a disciplinary action. Hughes pled that the grievance procedure was not followed by Keath, Thiesing, or the Board. In addition, conduct and procedures outside of the manual are relevant to the implied contract inquiry, but as yet are unknown. Consequently, defendants' motion to dismiss Hughes' wrongful termination claims is premature, and must be denied.

**b. Violation of public policy**

■ A second exception to the at-will doctrine is a termination that violates public policy. Hughes contends that his termination violated public policy in that it constitutes retaliation for his exercise of rights and privileges. The tort of retaliatory discharge is an exception to the longstanding rule that an employee can be terminated with or without cause at any time.[15] This exception is a narrow one and applies only if the discharge seriously contravenes public policy.[16] Thus, Kansas courts have limited a cause of action for retaliatory discharge to two general cir-

---

**9.** *Davis v. LumaCorp, Inc.,* 992 F.Supp. 1250, 1253 (D.Kan.1998) (citing *Swart v. Huston,* 154 Kan. 182, 117 P.2d 576 (1941)).

**10.** *Id.*

**11.** *Brown v. United Methodist Homes for the Aged,* 249 Kan. 124, 815 P.2d 72, 81 (1991).

**12.** *Koopman v. Water Dist. No. 1 of Johnson County,* 972 F.2d 1160, 1164 (10th Cir.1992).

**13.** *Allegri v. Providence–St. Margaret Health Ctr.,* 9 Kan.App.2d 659, 684 P.2d 1031, 1035 (1984).

**14.** The manual states: "This list is intended to be representative of the types of activities which may result in a disciplinary action. It is not intended to be comprehensive and *does not alter the employment-at-will relationship between the employee and Neosho County."* (emphasis added).

**15.** *Aiken v. Bus. & Indus. Health Group Inc.,* 886 F.Supp. 1565, 1573 (D.Kan.1995).

**16.** *Id.*

cumstances: "(1) where an employee is discharged in retaliation for exercising or intending to exercise his or her rights under workers' compensation laws; and (2) where an employee is discharged for good faith reporting or threatening to report the employer's serious infraction of rules, regulations, or law pertaining to public health, safety, and general welfare." [17]

Hughes was neither terminated for exercising his workers' compensation rights, nor for whistle blower activity. Rather, he alleges that defendants retaliated against him for exercising his right to refuse to incriminate himself commensurate with the right to protect his reputation. Because Kansas courts have not recognized Hughes' wrongful discharge claim as an exception to the employee-at-will doctrine, he must show that the conduct upon which the wrongful termination claim is based is protected by Kansas public policy and that no alternative state or federal remedy exists.[18] Hughes fails to show that his actions constitute protected conduct. Nor has Hughes informed the Court of a definitive statement by the Kansas courts or the legislature that his termination touches upon public policy. And, any damage to Hughes' reputation as a result of his termination, may be redressed by a state law defamation claim. Hughes has not shown that the alleged conduct is protected by public policy, nor that no alternative remedy exists; therefore his wrongful termination claim against Keath and Thiesing is not cognizable under the public policy exception to the at-will employment doctrine.

Hughes also attempts to implicate the Board in his wrongful termination claim. He claims that Keath and Thiesing's act of terminating him was condoned and approved by the Board. But, Keath is an independently elected official whose authority is established and governed by the legislature.[19] The legislature has given Keath the authority to appoint, promote, demote, and dismiss deputies and assistants, including Hughes, for whose acts Keath would be responsible.[20] At no point did Keath need the Board's approval to terminate Hughes from his position. Even if the Board condoned and approved Hughes' termination, the legislature has given Keath, not the Board, the authority to terminate Hughes. Thus, the Board cannot be held liable for the wrongful termination of Hughes; and the Court grants defendants' motion to dismiss the Board. And, because Hughes has failed to state any claim against the individual commissioner defendants, the motion to dismiss the wrongful termination claims against defendants Clements, Shultz, and Yarnell is similarly granted.

## 2. Section 1983 Substantive Due Process Claims

■ Hughes alleges that defendants Keath, Thiesing, Clements, Shultz, and Yarnell engaged in a course of conduct that deprived him of his Fourteenth Amendment right to substantive due process. The Due Process Clause provides that the government cannot "deprive any person of life, liberty or property, without due process of law." [21] Not every right or interest is entitled to protection under the substantive Due Process Clause.[22] Rath-

---

**17.** *Lange v. Showbiz Pizza Time, Inc.*, 12 F.Supp.2d 1150, 1154–55 (D.Kan.1998).

**18.** *See id.* at 1155.

**19.** *See Bd. of County Comm'rs of County of Lincoln, Kansas v. Nielander*, 275 Kan. 257, 261–62, 62 P.3d 247 (2003) (stating that the county commissioners are not free to control

the hiring and firing of the deputies and assistants appointed by the sheriff).

**20.** *See* K.S.A. 19–805(d).

**21.** U.S. Const. amend. XIV.

**22.** *Archuleta v. Colorado Dep't of Inst., Div. of Youth Services*, 936 F.2d 483, 489 n. 6 (10th Cir.1991).

er, a substantive due process claim is "founded upon deeply rooted notions of fundamental personal interests derived from the Constitution." [23] Substantive due process is generally accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.[24]

The standard for judging a substantive due process claim is whether the challenged government action would "shock the conscience of federal judges." [25] To satisfy this standard, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." [26] Instead, a plaintiff "must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." [27]

Hughes bases his substantive due process claim on the deprivation of a liberty interest in his good name and reputation. But, even taking Hughes' allegations as true, the Court concludes that he has not stated an actionable § 1983 claim based upon substantive due process violations. He has alleged merely harm to his reputation and loss of employment, neither of which implicate matters traditionally afforded substantive due process, such as marriage, family, procreation, and the right to bodily integrity. In essence, Hughes has alleged ordinary tort claims, but a substantive due process violation must be something more than an ordinary tort to be actionable.[28] Nor has he supplied any authority that the deprivation of a liberty interest in his reputation constitutes a *substantive* due process violation.

Indeed, the authority cited by Hughes in support of his substantive due process claim raises concerns not of substantive, but of procedural due process.

Even if Hughes had alleged a substantive due process violation, he has not set forth facts that defendants' actions were arbitrary and conscience shocking. He has alleged that Keath and Thiesing "knowingly, willfully and maliciously" made false and untrue statements regarding his job performance and criminal conduct. But, something more than intentional or reckless conduct is necessary to state a substantive due process claim. Hughes has not alleged conduct that is so egregious as to shock the conscience of this Court. Thus, Hughes' substantive due process claim fails as a matter of law.

### 3. Section 1983 Procedural Due Process Claims

Hughes also asserts a procedural due process claim and spends a considerable portion of his brief establishing that he stated a claim for a deprivation of his liberty interest in his good name and reputation. Defendants mention Hughes' procedural due process claims in a footnote in their motion and suggest that controlling Tenth Circuit law is incorrect. However, defendants recognize that "this Court is circumscribed by controlling Tenth Circuit precedent and raise this point only to preserve the issue for appeal ...." Defendants do not seek dismissal of Hughes' procedural due process claim, and admittedly, for the purpose of their motion to dismiss, do not "question the adequacy of

---

23. *Hennigh v. City of Shawnee,* 155 F.3d 1249, 1256 (10th Cir.1998).

24. *Abeyta v. Chama Valley Indep. Sch. Dist., No. 19,* 77 F.3d 1253, 1257 (10th Cir.1996).

25. *Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 528 (10th Cir.1998).

26. *Id.*

27. *Id.*

28. *Abeyta,* 77 F.3d at 1257.

Plaintiff's procedural due process claim with regard to his liberty interest." Thus, whether Hughes has pled a procedural due process violation is not before the Court.

### 4. Municipal Liability

■ Defendants argue that Hughes has failed to plead facts that would make the Board liable under 42 U.S.C. § 1983. In response, Hughes states that "the Complaint alleges that the Commission is responsible for the supervision, control and conduct of both the Neosho County Sheriff and County Attorney, who were responsible for publicizing the remarks about plaintiff."

Liability against a municipality under a theory of *respondeat superior* is unavailable for claims asserted pursuant to § 1983.[29] It is well-settled that a governmental entity "may be held liable under § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees."[30] Municipal liability may not be premised upon the employment of a person who has violated a plaintiff's federally protected rights.[31] Instead, a municipal wrong is one resulting from the enforcement of a municipal policy or custom.[32] To establish municipal liability, "a plaintiff must show (1) the existence of a municipal custom or policy and (2) a

direct causal link between the custom or policy and the violation alleged."[33]

Hughes bases his § 1983 claim against the Board and Commissioners Clements, Shultz, and Yarnell only on a theory of *respondeat superior*. But, it is clear that "a county board of commissioners has no oversight over a sheriff's office."[34] It is the County, not the Board that had authority over Keath.[35] And, even if the Board could be held liable for Keath's acts on a *respondeat superior* theory, Hughes would still not have stated a valid § 1983 claim. He has not asserted a violation of a municipal policy or custom, nor that the decision to disseminate remarks about his alleged offering of perjured testimony was made by a Commissioner with final decision-making authority. Nor has he pled a direct and causal link between the policy or custom and the violation alleged. Consequently, Hughes' § 1983 claims against the Board, and the individual Commissioner defendants are dismissed.

### 5. Absolute Prosecutorial Immunity

■ Hughes alleges in his complaint that Thiesing defamed him on several occasions when she advised attorneys in sixty-five pending cases that she had to dismiss charges because "David Hughes had previously lied on the witness stand in one

---

**29.** *Monell v. Dep't of Soc. Services of New York City*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

**30.** *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir.1998) (citing *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

**31.** *Id.*

**32.** A "municipal custom or policy" may be established through an officially promulgated policy, *Monell*, 436 U.S. at 694, 98 S.Ct. 2018, a custom or persistent practice, deliberately indifferent training that results in the violation of a plaintiff's federally protected rights,

*City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), or a single decision by an official with final decision-making authority, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123–24, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

**33.** *Jenkins v. Wood*, 81 F.3d 988, 993–94 (10th Cir.1996) (citing *City of Canton*, 489 U.S. at 385, 109 S.Ct. 1197).

**34.** *Blume v. Meneley*, 283 F.Supp.2d 1171, 1175 (D.Kan.2003).

**35.** *See id.* at 1175 (noting that the county, not the board of commissioners, was the proper defendant in a § 1983 case).

or more other cases and that such activity had so damaged his credibility as a witness that he could not be called to testify in the cases to be dismissed." While Hughes concedes that Thiesing's decision to dismiss pending cases is protected under the prosecutorial immunity doctrine, he claims that her remarks, used in explanation for her decision to dismiss those pending cases, was unprotected defamation.

The Supreme Court has recognized a rule of absolute immunity when a prosecutor's activities are "intimately associated with the judicial phase of the criminal process," or when the actions are incidental to or give legal effect to the judicial proceeding.[36] Ultimately it is the function being performed which determines if the prosecutor is protected by absolute immunity.[37] A prosecutor acting as an advocate for the state is afforded absolute immunity, whereas a prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity.[38]

In advising attorneys that she was dismissing the charges in their cases, Thiesing was acting within the scope of her duties as a prosecutor and advocate for the state. Her conduct was clearly incidental to the legal proceedings; she was informing the attorneys of the reason for the dismissals. As such, her actions were prosecutorial and protected by absolute immunity. The Supreme Court has held that activities by prosecutors entitled only to qualified immunity include: (1) giving legal advice to police; (2) holding a press conference; (3) fabricating evidence during the preliminary investigation of an un-

solved crime; and (4) personally attesting to the truthfulness of statements made in a certification.[39] Thiesing's explanatory comments, however, do not fall within any of the aforementioned categories. Thus, defendants' motion to dismiss the claims against Thiesing based upon her dismissal of the sixty-five pending criminal prosecutions is granted.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion to Dismiss (Doc. 13) is GRANTED IN PART AND DENIED IN PART.

**IT IS SO ORDERED.**

**36.** *McCormick v. City of Lawrence, Kansas,* 253 F.Supp.2d 1172, 1204 (D.Kan.2003) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)).

**37.** *Id.*

**38.** *Id.* at 1205.

